# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**COVENANT INVESTMENTS INC.,**

Case No. **10-62105-11**

Debtor.

# MEMORANDUM of DECISION

At Butte in said District this 5th day of August, 2011.

In this Chapter 11 case, Calvin L. Braaksma, attorney for First Security Bank ("First Security") filed an Application for Professional Fees and Costs ("Application") on June 2, 2011, requesting an award of attorney's fees in the amount of $15,030.00 and reimbursement of expenses in the amount of $150.49. The Application was accompanied by a Notice which gave parties-in-interest fourteen (14) days to file a response and request a hearing, and advising that failure to respond shall be deemed an admission that the relief requested in the Application should be granted. Debtor filed an Objection to the Application on June 16, 2011, and scheduled the matter for hearing. Prior to the scheduled hearing, Debtor and First Security, through counsel, filed a joint motion to vacate the hearing and submit approval of the Application to the Court on stipulated facts. The Court granted the parties' joint motion. On July 8, 2011, Debtor and First Security filed the following agreed facts:

1. Covenant Investments, Inc. ("Covenant") filed a voluntary Chapter 11 petition on August 30, 2010.

2. Covenant's Second Amended Disclosure Statement was approved May 19, 2011.

1

Covenant's Second Amended Chapter 11 Plan was confirmed on May 19, 2011.

3. First Security filed its Application of First Security bank for Professional Fees and Costs and Notice on June 2, 2011.

4. Covenant filed its Debtors' Objection to Application of First Security Bank for Professional Fees on June 16, 2011.

5. Debtor borrowed the sums of $3,929,036.00 and $1,807,359.50, respectively, pursuant to two separate promissory notes, as follows:

   a. Loan xxxx6592 in the original principal sum of $3,929.036; and

   b. Loan xxxx7486 in the original principal sum of $1,807,359.36.

6. The promissory notes for both loans xxxx6592 and xxxx7486 list Flathead Bank, Valley Bank of Belgrade Branch ("Valley Bank") as "lender."

7. Loan nos. xxxx6592 and xxxx7486 were secured by pledges of real property pursuant to two mortgages, as follows:

   a. Loan xxxx6592 is secured by a mortgage on real property recorded as document no. 2233919, records of the Gallatin County Clerk and Recorder, Gallatin County, Montana.

   b. Loan xxxx7486 is secured by a mortgage on real property recorded as document no. 2272287, records of the Gallatin County Clerk and Recorder, Gallatin County, Montana.

8. The outstanding balances owing on loans xxxx6592 and xxxx7486, as of the date Debtor filed its Chapter 11 petition are as follows:

   a. Loan xxxx6592: $3,542,494.44 [Proof of Claim no. 6]; and

2

  b.  Loan xxxx7486: $929,671.13 [Proof of Claim no. 6].

9.  The Proof of Claim filed by Valley Bank contains the following statement:

> First Security Bank of Bozeman, Montana is a participating lender for these secured loans, although the loans are in the name of Flathead Bank, Valley bank Branch.  This summary shows the total amount loaned by both banks [Proof of Claim no. 6].

10.  Debtor also borrowed additional money from Valley Bank which is listed as unsecured debt on Proof of Claim no. 6.  Debtor has no unsecured loans with First Security Bank.

11.  Valley Bank and First Security Bank participated in loan nos. xxx6592 and xxxx7486 pursuant to two participation agreements.  Exhibits E and F are renewals of identical participation agreements which originally were executed and dated when loan nos. xxx6592 and xxxx7486 were signed.

12.  Both participation agreements list Valley Bank as the "originating lender (seller)" and First Security Bank as "participating lender (purchaser)".

13.  The amount of First Security Bank's participation in loan no. xxx6592 is approximately 61%.  That is, First Security bank is owed approximately 61% of the outstanding balance and Valley Bank is owed approximately 39% of the outstanding balance.

14.  The amount of First Security Bank's participation in loan no. xxx7486 is 100%.  That is, First Security Bank is owed 100% of the outstanding balance and Valley Bank is owed 0% of the outstanding balance.

15.  First Security Bank seeks recovery of professional fees and costs as set out in its

3

application [Docket no. 189]. Debtor does not dispute the reasonableness of the hourly rate charged nor the time expended for the services provided [Docket no. 192, page 2, par. 3], but disputes First Security Bank's right to recover professional fees and costs in the absence of a direct agreement between Debtor and First Security Bank [Docket no. 192, page 2, par. 2].

In addition to the above stipulated facts, Debtor, in its Memorandum in Opposition to Allowance of Attorney's Fees and Costs to First Security Bank filed July 21, 2011, does not dispute that Valley Bank is an oversecured creditor and is entitled to a recovery of its attorney's fees and costs as provided by the loan agreement with Debtor. However, Debtor contends it is not obligated for any of Valley Bank's participating lenders attorney's fees or costs.

First Security counters that Valley Bank is both a secured and unsecured creditor. First Security in only a secured creditor. Debtor's confirmed Second Amended Chapter 11 Plan treats secured and unsecured creditors differently. Thus, First Security argues that Valley Bank and First Security Bank have potentially different and conflicting goals, objectives and motives and that it would be irresponsible, in the context of this bankruptcy case, for Valley Bank and First Security to rely upon the other's counsel, rather than separate and independent counsel, to protect each bank's own, respective, independent interests.

First Security argues that its attorney's fees and costs are contemplated by Mont. Code Ann. § 71-1-233, which reads:

In an action to foreclose a mortgage of real property, the court must allow as a part of the costs a reasonable attorney's fee, which shall be fixed by the court, any stipulation in the instrument or any agreement between the parties to the contrary notwithstanding.

4

First Security cites to *In Farm Credit Bank of Spokane v. Newton*, 252 Mont. 336, 829 P.2d 931, 932 (1992); *Graham v. Superior Mines*, 100 Mont. 427, 49 P.2d 443, 445 (1935); and *Bermes v. Sylling*, 179 Mont. 448, 464, 465. 587 P2d 377, 385, 386 (1978), to support the foregoing argument.  Such cases are distinguishable.  In *Farm Credit Bank of Spokane*, the Supreme Court of Montana approved post-sale attorney fees incurred by the secured creditor in its efforts to secure possession of property the secured creditor bought at its foreclosure sale.  *Graham* also involved costs stemming from an action for the foreclosure of a mortgage.  Finally, the Court in *Bermes* concluded that the action "was in fact in the nature of a foreclosure action" and that a "party successfully defending against a foreclosure action is awarded attorney fees."  *Bermes*, 179 Mont. at 464.  First Security does not argue it was attempting to foreclose on Debtor's property.  Thus, Mont. Code Ann. § 71-1-233 is not applicable.

Furthermore, First Security and Debtor's arguments complicate the issue and miss the point.  First Security asserts it is a creditor with a filed proof of claim.  Proof of Claim No. 6 was filed by Valley Bank's attorney, Wayne E. Jennings.  The Proof of Claim identifies the creditor as "Flathead Bank, Valley Bank Branch."

In an Order entered July 13, 2011, the Court awarded Valley Bank's counsel, Wayne E. Jennings, reasonable professional fees in the total amount of $13,527.50 and costs in the amount of $955.00 for a total of $14,482.50 as part of the allowed claim of oversecured creditor Valley Bank pursuant to 11 U.S.C. § 506(b).  The aforementioned fee award related to services provided between September 7, 2010, and May 24, 2011.

The Court explained in the July 13, 2011, Order approving Valley Bank's fees and costs:

> Jennings applies for attorney's fees on the basis that Valley Bank is an

5

oversecured creditor.  The Ninth Circuit construed 11 U.S.C. § 506(b) in *In re Kord Enterprises II*, 139 F.3d 684, 687, 689 (9th Cir. 1998):

Section 506(b) provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

> § 506(b). Both parties agree that the Bank was an oversecured creditor and thus came within the purview of § 506(b).  The language of that section is clear.  The creditor is entitled to attorneys' fees if (1) the claim is an allowed secured claim;  (2) the creditor is oversecured;  (3) the fees are reasonable;  and (4) the fees are provided for under the agreement.  *See, e.g., Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.)*, 151 B.R. 931, 935 (9th Cir. BAP 1993); *Meritor Mortgage Corp., West v. Salazar (In re Salazar)*, 82 B.R. 538, 540 (9th Cir. BAP 1987).

> \* \* \*

What constitutes "reasonable attorney's fees" is discussed in *In re Hungerford,* 19 Mont. B.R. 103, 136-138 (Bankr. Mont. 2001), *quoting In re Huhn*, 145 B.R. 872, 876 (Bankr. W.D. Mich. 1992):

> Pursuant to Bankruptcy Code § 506(b), a secured creditor is allowed only "reasonable attorney fees".  In making a fee determination, the court must consider not only the fee agreement, but the overall fairness and reasonableness of the fee under all of the circumstances. *In re K-Fab, Inc.*, 118 B.R. 240, 242 (Bkrtcy.M.D.Pa.1990) (*citing Lund v. Affleck*, 587 F.2d 75 (1st Cir.1978)).

> "Reasonable" fees are those necessary to the collection and protection of a creditor's claim.  *In re PCH Assoc.*, 122 B.R. at 204; *In re Kroh Bros.*, 105 B.R. at 521.  They include fees for those actions which a similarly situated creditor might have taken.  *In re Riker*, 122 B.R. at 970.

> In *In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 169 (Bkrtcy.S.D.N.Y.1985), the court held that "it is inherently unreasonable to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved." (quoted with approval in *In re Rubenstein*, 105 B.R. at 203; *In re Kroh Bros.*, 105 B.R. at 521).

6

> An oversecured creditor is not entitled to compensation for its attorneys' fees for every action it takes by claiming that its rights have been affected. *In re Kroh Bros.*, 105 B.R. at 521.  "[W]here services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under § 506(b)." *In re Riker*, 122 B.R. at 973 (*quoting In re Wonder Corp. of America*, 72 B.R. 580, 591 (Bkrtcy.D.Conn.1987), *aff'd*, 82 B.R. 186 (D. Conn. 1988)).

*See also In re Digital Products Corp.*, 215 B.R. 478, 482 (Bankr. S.D. Fla. 1997).

Under § 506(b), an oversecured creditor is entitled to attorneys' fee if (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement.  Debtor and First Security do not dispute that Valley Bank has an allowed secured claim, that Valley Bank is oversecured or that the two agreements at issue provide for attorney fees.  The sole question is whether the combination of Valley Bank and First Security's fees is reasonable.

This case was commenced on August 30, 2011.  The Debtor has not disputed Valley Bank's claim.  Valley Bank filed an objection to approval of Debtor's original disclosure statement but did not file any objections to Debtor's subsequent disclosure statements.  Debtor's Second Amended Plan identifies Valley Bank as a Class III claimant holding a third position mortgage lien on Debtor's real property.  Class III is impaired.  Debtor's Plan fixes the amount of Valley Bank's claim at $4,319,000, which claim "will be paid through payments of (a) of 72.9% of the gross sales price from the sale of each parcel of Real Property, and (b) the remaining balance due in full on the fifth anniversary of the Effective Date.  The Class III Allowed Secured-Claim shall accrue interest on the unpaid balance at the rate of 4% per annum."  Valley Bank did not file any objections to Debtor's proposed plans and in fact cast a ballot in favor of confirmation of Debtor's Second Amended Plan.  The Debtor's Second Amended Plan was

7

confirmed by Order entered May 19, 2011. First Security did not file objections to any of Debtor's disclosure statements or proposed Chapter 11 plans. In fact, First Security's counsel's name appears on the Court's docket only four times: in the docket entry for a request for notice filed September 3, 2010; in opposition filed October 1, 2010, to two motions to sell filed by the Debtor; in opposition filed October 14, 2010, to two motions to sell filed by the Debtor; and in the docket entry for the pending Application.

After reviewing the record in conjunction with the billing statements attached to Valley Bank's application for fees and costs and the billings statements attached to First Security's application for fees and costs, the Court concludes that First Security has not shown that its requested charges for attorney services are reasonable and should be paid by the bankruptcy estate under 11 U.S.C. § 506(b).

The Court does not disagree that Valley Bank and First Security may have different and conflicting goals, objectives and motives in this case, particularly where Valley Bank has a separate and independent unsecured claim. However, Valley Bank and First Security have exactly the same goals with respect to loan xxxx6592 and loan xxxx7486. The effort by Valley Bank and First Security to collect from the bankruptcy estate their separate fees with respect to loan xxxx6592 and loan xxxx7486 in effect penalizes the Debtor and the bankruptcy estate. The fact that Valley Bank and First Security entered into the participation agreements does not give them the unilateral authority to double the fees and costs that the Debtor is liable to pay under the agreements associated with loan xxxx6592 and loan xxxx7486. This Court finds that First Security's requested fees are, for the most part, duplicative of those already awarded to Valley Bank. First Security's requested fees were certainly not necessary to preserve any interest First

Security may have vis-a-vis the participation agreements as Valley Bank was taking the steps necessary to protect the claims at issue. The Court therefore concludes that First Security has not sustained its burden of showing that its requested fees are reasonable or cost-justified.

For the reasons discussed above, the Court will enter a separate order providing as follows:

**IT IS ORDERED** that approval of the Application for Professional Fees and Costs filed June 2, 2011, by Calvin L. Braaksma on behalf of First Security Bank is DENIED.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

9